1  WILLIAM J. FLYNN, Cal. Bar No. 95371
   SCOTT M. DE NARDO, Cal. Bar No. 216749
2  NEYHART, ANDERSON, FLYNN & GROSBOLL
   44 Montgomery Street, Suite 2080
3  San Francisco, CA  94104
   TEL: (415) 677-9440                    E-filing
4  FAX: (415) 677-9445
   Email: sdenardo@neyhartlaw.com
5
   Attorneys for Plaintiffs
6

7              UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                  (San Jose Division)
                                                        **JW**
10
   LOCAL 234 of the INTERNATIONAL        )  Case No. **CV 07   5170**
11 BROTHERHOOD OF ELECTRICAL            )
   WORKERS, AFL-CIO; INTERNATIONAL       )
12 BROTHERHOOD OF ELECTRICAL            )
   WORKERS' UNION, LOCAL 234             )  **COMPLAINT &**
13 EDUCATIONAL AND TRAINING FUND;        )  **REQUEST FOR JURY TRIAL**
   ELECTRICAL WORKERS HEALTH &           )
14 WELFARE TRUST FUND;                   )
   INTERNATIONAL BROTHERHOOD OF         )
15 ELECTRICAL WORKERS DISTRICT 9         )
   PENSION PLAN; and, KEN SCHERPINSKI,   )
16 as Trustee of the Plaintiff Trusts and Business )
   Manager/Financial Secretary of I.B.E.W. Local )
17 234,                                   )
                                          )
18          Plaintiffs,                   )
                                          )
19     vs.                                )
                                          )
20 VILLA ELECTRIC, INC., a California     )
   Corporation; and, LAZARO LEE VILLA, an )
21 Individual,                            )
                                          )
22          Defendants.                   )
                                          )
23                                        )
                                          )
24                                        )
                                          )
25 _____   )

**RECEIVED**

DEC – 7 2007

Neyhart, Anderson,
Flynn & Grosboll

Plaintiffs allege:

## I.

## COMMON FACTUAL ALLEGATIONS

1.    <u>Jurisdiction</u>. This is an action to collect unpaid contributions to multi-employer benefit plans pursuant to the terms of each plan, a collective bargaining agreement and an April 2007 Settlement Agreement. Jurisdiction is pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), (e) and (g), 29 U.S.C. § 1145 and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. Jurisdiction also exists pursuant to 28 U.S.C. § 1331.

2.    <u>Venue</u>. Venue is appropriate in this District as the Plaintiff Trust is administered here (in Santa Clara County) and the breach took place in this district (in Monterey County); 29 U.S.C. § 1132(e)(2).

3.    Plaintiffs INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS' UNION, LOCAL 234 EDUCATIONAL AND TRAINING FUND; ELECTRICAL WORKERS HEALTH & WELFARE TRUST FUND; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS DISTRICT 9 PENSION PLAN (hereafter the "Trusts"), are multi-employer employee benefit plan pursuant to ERISA, 29 U.S.C. § 1002(3), (37) and 29 U.S.C. § 1132(d)(1) and each is a jointly trusteed employee benefit trust pursuant to the LMRA, 29 U.S.C. § 186(c)(5). Employers make contributions to the Trust pursuant to the requirements of their collective bargaining agreement with Plaintiff LOCAL 234 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO (hereafter "the Union" or "Local 340"). Plaintiff ELECTRICAL WORKERS HEALTH & WELFARE TRUST FUND is the authorized collection agent for each of the Trusts and other Funds.

4.    Plaintiff KEN SCHERPINSKI is a Trustee of each of the Trusts, a fiduciary of each Trust and the Business Manager of Local 234.

---

**COMPLAINT AND REQUEST FOR JURY TRIAL**
Case No.

5.    Defendant VILLA ELECTRIC, INC. (hereinafter referred to as "Villa Electric") agreed to be bound to the terms and conditions of a collective bargaining agreement with the Plaintiff Local 234 (hereinafter referred to as "Local 234" or the "Union"). (Attached hereto as Exhibit "A" is a true and correct copy of a "Letter of Assent – A"). The "Letter of Assent – A" binds Villa Electric to the collective bargaining agreement. (Attached hereto as Exhibit "B" is a true and correct copy of the applicable collective bargaining agreement between the Monterey Bay California Chapter of the National Electrical Contractors Association and I.B.E.W. Local 234 for the relevant time period). The collective bargaining agreement requires the Defendant to submit monthly transmittals of hours worked and make monthly contributions to the Trusts or Funds for fringe benefits for the hours worked by covered employees. The collective bargaining agreement also requires the Defendant to be bound to the applicable Trust agreements.

6.    Defendant LAZARO LEE VILLA ("Lee Villa") is the CEO of Defendant Villa Electric and agreed to be held personally liable for the actions of Villa Electric with respect any breaches of the Settlement Agreement described in ¶ 7 below.

7.    Defendants Villa Electric and Lee Villa agreed to be bound to the terms and conditions of a Settlement Agreement executed on April 10, 2007 concerning prior delinquencies to the Plaintiff Trusts for the period of August 4, 2005 through and including December 31, 2006. (Attached hereto as Exhibit "C" is a true and correct copy of the Settlement Agreement executed by Villa Electric and Mr. Lee Villa). Among other things, the Settlement Agreement specified monthly payments of not less than $1,000.00 for a period of nine months ($9,000.00 total) with the balance of $692.49 plus any additional interest on principal amounts due waived provided time receipt of the monthly settlement payments due on the last business day of each month commencing March 30, 2007. (See, ¶ 2a and ¶ 2b of the Agreement).

8.    Defendant Villa Electric is a business believed to have a California contractor's license #608138 and a California corporate license number C1660758. Defendant Villa Electric is

**COMPLAINT AND REQUEST FOR JURY TRIAL**
Case No.

2

engaged in the installation and testing of electrical wiring and electrical circuits business in Monterey County, California. Plaintiffs are informed and reasonably believe that Defendant Villa Electric is a fiduciary of the Trust pursuant to 29 U.S.C. § 1145, et seq.

9.    At all times material herein, the Defendants Villa Electric and Lee Villa have engaged in the construction industry in California and as such has been an "employer" "engaged in an industry or activity affecting commerce" within the meaning of 29 U.S.C. § 152 and 29 U.S.C. §§ 1002-1003.

10.    The Defendants have repeatedly underpaid or not paid the required contributions to the plans during the relevant period of the statute of limitations pursuant to the appropriate collective bargaining agreement and/or Trust agreement, as well as the April 2007 Settlement Agreement. More specifically, the Defendants failed to submit all but two of the monthly settlement payments specified in the April 2007 Settlement Agreement.

11.    Under the terms of the Electrical Workers Health and Welfare Trust Fund Agreement to which the Defendants agreed to be bound, an employer who fails to make timely contributions to the Trust for employee fringe benefits is liable to the Trust for all unpaid contributions, liquidated damages and interest on the unpaid principal, as well as attorneys' fees and collection costs. *See also*, 29 U.S.C. § 1132(g).

II.

FIRST CLAIM

(ERISA - 29 U.S.C. § 1145)

12.    Plaintiffs incorporate by reference and reallege paragraphs 1-11 as if set out in full.

13.    Jurisdiction. This is an action to collect unpaid contributions found owing to a multi-employer benefit plan pursuant to the terms of the Trust agreement and the collective bargaining agreement. Jurisdiction is pursuant to ERISA, 29 U.S.C. §§ 1132(a), (e) and (g) and § 1145.

14.     The Defendants' action constitutes a failure of an employer to make contributions to a multi-employer plan, as well as a breach of fiduciary duty owed pursuant to 29 U.S.C. § 1145.

15.     Plaintiffs are entitled to judgment for all unpaid contributions, liquidated damages, prejudgment interest and reasonable attorneys fees and costs pursuant to 29 U.S.C. § 1132(g)(2).

III.

SECOND CLAIM

(LMRA)

16.     Plaintiffs incorporate by reference and reallege paragraphs 1-11 and 13-15 as if set out in full.

17.     Jurisdiction.  This is an action to enforce a collective bargaining agreement pursuant to 29 U.S.C. § 185(a).

18.     The Defendants' failure to pay contributions owing breached the collective bargaining agreement between the Defendants and the Union to the detriment of the Plaintiffs and Plaintiffs are entitled to damages, liquidated damages, interest, attorneys' fees and costs pursuant to the agreement.

IV.

THIRD CLAIM

(BREACH OF CONTRACT)

19.     Plaintiffs incorporate by reference and reallege paragraphs 1-11, 13-15 and 17-18 as if set out in full.

20.     The Defendants' failure to submit monthly transmittals of hours worked and contributions owed thereon, as well as the Defendants' failure to remain current with the monthly settlement payments amounts breached the Settlement Agreement, dated April 2007 and Plaintiffs are entitled to damages, liquidated damages, interest, attorneys' fees and costs pursuant to the Settlement Agreement.

V.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray judgment as follows:

1.      For $8,692.49 owed in principal, liquidated damages and interest as a result of the Defendants' breach of the April 2007 Settlement Agreement.

2.      For prejudgment interest according to proof,

3.      For such equitable relief as this court deems just and proper,

4.      For reasonable attorneys fees and costs of suit (currently estimated to be approximately $2,500.00), and any further amounts according to proof, and

5.      For such other and further relief as this court deems just and proper.

Respectfully submitted,

Dated: December 4, 2007

Scott M. De Nardo
NEYHART, ANDERSON, FLYNN & GROSBOLL
Attorneys for Plaintiffs

1

2

## JURY TRIAL DEMAND

3         Plaintiffs hereby demand trial by jury.

4     Dated:  December ___, 2007.

5

6                                                    Scott M. De Nardo
                                                     Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**COMPLAINT AND REQUEST FOR JURY TRIAL**                                    6
Case No.

**EXHIBIT** | **A**

EXHIBIT A

# INSIDE AGREEMENT

### Between

## International Brotherhood of Electrical Workers

## Local Union 234

 

### and

## Monterey Bay California Chapter

### of

## National Electrical Contractors Association

## Effective July 14, 2003 - May 28, 2006

## INSIDE AGREEMENT

Agreement by and between the Monterey Bay California Chapter of the National Electrical Contractors Association (NECA) and Local Union No. 234, IBEW.

It shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Monterey Bay California Chapter of NECA and the term "Union" shall mean Local Union No. 234, IBEW.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## BASIC PRINCIPLES

The National Electrical Contractors Association and the International Brotherhood of Electrical Workers having common and sympathetic interest in the Electrical Industry and wishing to further the use of electricity in a manner safe to life and property while protecting the legitimate interests of both the public and the people engaged in the industry, realize that a system of maintaining harmonious relations and continuous peace between the Employer and the Employee is necessary, and in good faith agree to adjust any differences by rational and common sense methods.

The Employer and the Union recognize the desirability of providing continued employment in the Electrical Construction Industry and the necessity of having available at all times, a supply of competent Employees with experience and training in the various types of work covered by this Agreement.

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance impairment should contain a strong rehabilitation component. The parties recognize the employer's right to adopt and implement a drug and alcohol policy subject to all applicable laws and regulations, procedural safeguards, scientific principles, and legitimate interests of privacy and confidentiality. However, the Union reserves the right to negotiate regarding the terms of the employer's policy before the policy is implemented by the Employer. When drug and alcohol testing is performed, all testing shall be conducted in accordance with the procedures outlined in the aforementioned policy.

In accordance with the Federal Government Executive Orders, the Fair Employment Practices Act of the State of California, and other applicable laws, the parties to this Agreement are obligated not to discriminate against Employees or applicants for employment because of race, religion, color, age, sex, creed, national origin or disability.

Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto do agree as follows:

1

# ARTICLE I

## STANDARD CIR

### EFFECTIVE DATE/ CHANGES/GRIEVANCES/DISPUTES

**EFFECTIVE DATE:**

**Section 1.01.** This Agreement shall take effect July 14, 2003, and shall remain in effect until May 28, 2006 unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from May 29 through May 28 of each year, unless changed or terminated in the way later provided herein.

**CHANGES:**

**Section 1.02(a).** Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b). Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c). The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d). Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

(e). When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**Section 1.03.** This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

**Section 1.04.** There shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES:**

**Section 1.05.** There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may

decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

**Section 1.06.** All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

**Section 1.07.** All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

**Section 1.08.** Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

**Section 1.09.** When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

**Section 1.10.** Any grievance not brought to the attention of responsible opposite parties to this Agreement in writing within 20 working days of its occurrence shall be deemed to no longer exist. No committee member shall sit on a case in which he is directly involved.

## ARTICLE II

### Employer Rights – Union Rights

### 2.01 EMPLOYEES WITH C-10

(a)  No Employee, employed by or available for employment by Employers covered by this Agreement, shall himself become a contractor for the performance of any electrical work. Any employee that possesses a C-10 license shall deactivate the license.

(b)  Employee Definition: Anyone performing work that is covered by the Scope of this Agreement shall be considered as an Employee under this Agreement.

### 2.02 FAVORED NATIONS

The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by the Agreement any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

### 2.03 UNION

The Employer recognizes the Union as the sole bargaining agent of the Employees covered under this Agreement.

### 2.04 UNION SECURITY

All Employees covered by the terms of the Agreement shall be required to become and remain

3

members of the Union as a condition of employment from and after the eighth (8) calendar day following the date of their employment or the effective date of this Agreement, whichever is later.

## 2.05 MANAGEMENT RIGHTS

The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

## 2.06 EMPLOYER QUALIFICATIONS

(a)    Certain qualifications, knowledge, experience and financial responsibilities are required of everyone desiring to be a signatory party to this Agreement. Therefore, an Employer, by signing this Agreement certified that it is a person, firm, partnership or corporation whose principal business is electrical contracting and who possesses the following qualifications and possesses documentary evidence substantiating the following:

   (1)    Maintains a legal place of business, which means an established office and shop, displaying a sign stating the nature of the business, conducts the ordinary tasks of operating his business and maintains a telephone and complete payroll records.

   (2)    Agrees to comply with all fringe benefit trust provisions.

(b)    The Union shall refer job applicants at the request of the Employer to either shop or job.

(c)    The Employer shall furnish, as required, sufficient job payroll data in order that prevailing wages may be properly certified under Davis-Bacon and similar acts.

## 2.07 RESPONSIBLE MANAGING OFFICER & RESPONSIBLE MANAGING EMPLOYEE*

Any signatory party or firm that becomes RMO or RME to any other person, firm, or corporation that does not immediately upon demand, become signatory to this Agreement, shall upon written notice by the Union immediately withdraw as RMO or RME. Failure to withdraw shall be cause for cancellation of the individual Employer's Agreement.

*(As defined in Chapter 9, Article 5, of the Business & Professions Code, State of California Contractors License Law.)

## 2.08 WORK PRESERVATION CLAUSE

(a)    In order to protect and preserve for the Employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer,

4

through its officers, directors, partners or stockholders, exercises either directly or indirectly, management, control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

(b)   As a remedy for violations of this section, the Labor-Management Committee, the Council on Industrial Relations for the Electrical Contracting Industry and/or an independent arbitrator, as the case may be, are empowered, in their discretion and at the request of the Union, to require an Employer to (1) pay to affected Employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such Employees as a result of violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or other articles of this Agreement.

(c)   If, as a result of violations of this section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (b) above, or to defend an action which seeks to vacate award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund Trustees plus costs of the litigation, which have resulted from the bringing of such court action.

## 2.09 INSURANCE

For all Employees covered by this Agreement, the Employer shall carry Workman's Compensation Insurance, with a company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State, and shall furnish satisfactory proof of such to the Union. He shall also make all necessary contributions required by law.

## 2.10 FRINGE BENEFIT REMEDY

(a)   The failure of an individual Employer to comply with the provisions set forth covering contributions to the funds required by this Agreement shall also constitute a breach of the labor agreement. As a remedy for such violation, the Labor-Management Committee and/or the form of arbitration provided for in this Agreement, as the case may be, are empowered at the request of the Union to require an Employer to pay into the affected joint trust funds established under this Agreement, any delinquent contributions to such funds which have resulted from the violation.

(b)   If, as a result of violations of this section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (a) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountant's and attorneys' fees incurred by the Union and/or Fund Trustees, plus the cost of the litigation which have resulted from the bringing of such action.

## 2.11 TERMINATION OF AGREEMENT

Individual Employers who fail to remit as provided shall be additionally subject to having this

5

Agreement terminated after three (3) business days written notice being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid.

## 2.12 SURETY BOND

Any contractor employing up to five (5) employees covered by this Agreement will have to post a seventy-five hundred dollar ($7,500) bond or cash; any contractor employing from five (5) to ten (10) employees covered by this Agreement will have to post a ten thousand dollar ($10,000) bond or cash; any contractor employing more than ten (10) employees covered by this Agreement will have to post a fifteen thousand dollar ($15,000) bond or cash. Said bond shall be presented to the IBEW Union office ten (10) business days following the referral of the first employee and in a form acceptable to the parties to this Agreement, and guarantee payment of current, delinquent and future wages and/or fringes provided for in this Agreement. Certification of participation in the NECA West Payroll and Fringe Benefit Guarantee Trust Fund will satisfy this bond requirement. The Union office shall forward a copy of all bonds posted to the NECA Chapter office.

## 2.13 PICKET LINE

It shall not be considered a violation of this Agreement, nor shall any Employee be discharged by the Employer if he recognizes another Labor Union's primary picket line which is sanctioned by the local Central Labor Council, or the Building Trades Council. The Union shall notify the Employer as soon as possible if the Union secures such sanction. Should Employees leave the job where there is such sanctioned picket line, they shall carefully put away all tools, material, and equipment or other property of the Employer in a safe manner. The Union will be financially responsible for any loss to the Employer by Employees for neglect in carrying out this provision, but only when a safe place is provided for such property by the Employer.

## 2.14 LOANING OF EMPLOYEES

The Employer shall not loan, or cause to be loaned, any of his Employees to any other Employer.

## 2.15 WORKING CONTRACTOR

One (1) Employer member of the firm shall be allowed to work with the tools, provided the Employer:

(a) Applies to the Local Union for an application. The Union shall notify the Chapter of the one (1) Employer member of the firm who may work with the tools. Upon receipt of such notification, this working member cannot be changed without sixty (60) days prior written notice to the Union and the Chapter.

(b) Any and all work, as defined under the scope of this Agreement performed outside of regular working hours shall not be performed by the designated working member of the firm, if an employee exists, except in the case of an emergency. (Danger to life, limb or loss of property).

(c) The Employer hereby agrees that he has an obligation to provide gainful employment for his Employees prior to the Employer performing any work.

(d) Circumventing the intent of "Employer" shall not be permitted by the pretense of ownership by an immediate member of the family or by other means. He must be a journeyman of the trade or be included on the State License of the firm. He shall provide proof of ownership of at least twenty-five percent (25%) of the business to the satisfaction of the Union.

6

(e)  The working Employer shall not be permitted to work behind sanctioned lawful picket lines in order to perform work that comes under the scope of the Agreement.

## 2.16 STEWARDS

(a)  The Union shall have the right to appoint a Steward at any shop or on any job where Employees are employed under the terms of this Agreement.  Such Stewards shall see that this Agreement and working conditions are observed, and he shall be allowed sufficient time to perform these duties during regular working hours.  The Steward shall be offered the opportunity to be included in the crew when overtime is worked, the same as other Employees.

(b)  The Steward shall be notified prior to starting all premium time work on the job(s) under his area of concern, including but not limited to overtime, hightime, etc.  The daily makeup of each crew on any job with more than one (1) crew shall be made available to the Steward.

(c)  Under no circumstances shall an Employer dismiss or otherwise discriminate against an Employee for making a complaint or giving evidence with respect to an alleged violation of any provision of the Agreement.

(d)  The Union shall notify the Employer of the name of the Steward(s).  The Employer shall not remove, transfer, or dismiss any Steward from a shop or job site where a Steward has been appointed, except for just cause, unless mutually agreed upon with the Business Manager.  JOB SITE means any location where work is being performed under the terms and conditions of this Agreement.

(e)  Employers shall cooperate with the Steward in adjusting grievances and jurisdictional disputes, and in seeing that all overtime is equally distributed among the men on the job or in the shop insofar as is practical.

(f)  The Steward shall be notified of all new hires, and all terminations as set forth below:

(1) Shop Steward - On the same day when a man quits, is laid off, or is Discharged.

(2) Job Steward - Prior to the issuance of the termination check.

(g)  The appointment of a second (2nd) Steward may be made on any job after thirty (30) men are working on the job.

## 2.17 UNION ACCESS

(a)  Time cards indicating the amount of time per job and the date worked shall be maintained by the Employer and shall be made available to the Business Manager or the Union for the purpose of checking the amount of time worked by Employees.

(b)  The Business Manager or his assistant, shall have the right to visit the Employer's place of business during normal business hours to inspect the books of the Employer as they deal with the time records and methods of pay and expenses applying to Employees covered by this Agreement.

(c)  The Business Manager of the Union or his assistant shall be allowed reasonable access to any shop or job where Employees are employed under the terms of this Agreement.

## 2.18 SUBCONTRACTING AND PIECE WORK

(a)   No Employer shall directly or indirectly, or by any subterfuge, sublet, or contract with any Employee, all or any part of the labor services required by any contract of such Employer.

(b)   There shall be no piece-work, and no Employer, Employees or other agents shall give or accept, directly or indirectly, any rebate of wages. No Employer shall directly or indirectly or by any subterfuge, sublet or contract with any Employee to perform any labor or provide any services required of an Employer except as provided herein. No Employer shall sublet, borrow, or contract with any Employee for the use of any tools, equipment or vehicle.

## 2.19 SUBCONTRACTING CLAUSE

(a)   The Local Union is part of the International Brotherhood of Electrical Workers, and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of this Section will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation of annulment has occurred.

(b)   The subletting, assigning or transfer by an individual Employer of any work in connection with electrical work to any person, firm, or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his Employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

(c)   All charges of violations of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

## 2.20 UNION LABEL

The Employer agrees that he will not require any Employee to work on any products, equipment or materials which do not bear a union label or are manufactured under substandard wages and/or conditions. Any such requirement shall be considered a grievance as hereinbefore provided for.

## 2.21 WAGE OR PRICE FREEZE

(a)   All or any part of any negotiated wage increase agreed to by the parties that is prohibited or deferred by a Governmental wage or price freeze, shall become effective immediately following the day the wage or price freeze is lifted.

## 2.22 EFFECTIVE RATE CHANGE

The parties hereby agree that due to difficulties encountered in the reporting process, all changes in the reporting shall become effective on the first (1st) day of the pay week of the month that the change becomes effective.

## 2.23 SKILL PROGRAM

The Employer and the Union agree to abide by the rules as established in implementing and furthering the journeyman skill improvement program.

## 2.24 DISTRIBUTION OF WAGES ON FRINGE BENEFITS

It is mutually agreed that any portion of the agreed wage rate change may be added to any of the fringe benefits that exist as stipulated by the membership of I.B.E.W. Local Union No. 234.

## 2.25 NON-RESIDENT EMPLOYEES: *(Portability)*

An Employer signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, who signs an assent to this Agreement, may bring up to four bargaining unit employees employed in that Local Union's jurisdiction into this Local's jurisdiction and up to two bargaining unit employees per job from that Local's jurisdiction to this Local's jurisdiction for specialty or service and maintenance work. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on Employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

## 2.26 FOREMAN CALL-OUT

The Employer shall have the right to call Foremen by name provided:

(1)   The Employer shall notify the business manager, in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group. If no Foremen are on the highest priority list, (Book One), Foremen shall be referred from Book Two.

(2)   When an Employee is called as a Foreman, he must remain as a Foreman or must receive a reduction in force.

(3)   Requested individuals shall possess a valid CPR certificate.

(4)   Requested individuals shall have passed a recognized Industry Foremanship class after January 1, 1995 or shall be able to document a minimum of one (1) year's experience working as a Foreman in the Electrical Contracting Industry.

Requested individuals, Employees and/or Employers who falsify information or violate any eligibility requirement may be considered ineligible and no longer be able to participate in this program.


## ARTICLE III

### Hours-Wage Payments-Apprentices-Working Conditions


## 3.01 WORK DAY AND WORKWEEK

(a)   Eight (8) hours shall constitute a days work from 8:00 a.m. to 12:00 noon, and from 12:30 p.m. to 4:30 p.m. on Monday through Friday. The Employer, in recognition of past practices, agrees that up to twenty-five percent (25%) of his work crew may, by making prearrangement (3 work days prior notification) take the Friday off. A paid rest break shall be provided to all employees approximately midway through the morning and afternoon work periods. The rest periods shall be no more than ten (10) minutes in

9

length and are to be taken at his or her workstation. Additional rest periods shall be furnished if work continues outside of the normal workday.

(b) The first two (2) hours of overtime that is worked <u>contiguous or in conjunction</u> with the scheduled work day, either before or after, and up to eight (8) hours on Saturday between 8:00 a.m. and 4:30 p.m. may be worked at the time and one-half (1 ½) rate of pay.

(c) Time worked outside of (a) and (b) above and on Sundays and Holidays as set forth in 3.10 shall be paid at double (2x) rate of pay.

(d) An Employee reporting to the shop at the end of the regular workday shall be at the shop by 4:30 p.m. or the applicable overtime rate shall apply.

(e) Employees shall be required to report to an assigned area designated by the Employer. All Employees that are part of an assigned crew shall report to the same assignment area which shall be a job shack or a company owned gang box. This location shall not be more that 1,000' from the parking area. If the parking area is further than 1000 feet from the assignment area, the employee will walk in on his/her time and will walk out on the employer's time. The applicable rate of pay shall apply.

(f) When directed by the owner or General Contractor, an adjusted workday of 8 ½ continuous hours (unpaid lunch) may be performed Monday through Friday, excluding Saturdays, Sundays and Holidays.

The adjusted workday shall be eight (8) hours of work between the hours of 4:30 p.m. and 8:00 a.m. Workmen shall be paid for a minimum of eight (8) hours for the shift regardless of hours worked (unless time off is requested by the Employee). The thirty-minute lunch period is to be taken at the end of four (4) hours of work. The starting time of the adjusted workday may be adjusted with the approval of the Union.

The workmen on this shift shall receive the regular hourly rate plus 25% of the basic Journeyman Wireman rate for each hour paid.

Overtime before or after the shift shall be paid at the double (2x) time rate.

(g) The employer, by mutual consent of the Union, may institute a work week consisting of four (4) consecutive ten (10) hour days between the hours of 7:00 a.m. and 6:00 p.m., Monday through Thursday, with one-half hour allowed for a lunch period. Friday may be used as a make-up day, and, if utilized, a minimum of eight (8) hours must be scheduled. After ten (10) hours in a workday, overtime shall be paid at a rate of double (2x) time the regular rate of pay. The first eight (8) hours worked, after forty (40) hours of work at the regular rate of pay, shall be paid at a rate of one and one-half (1 ½) times the regular rate of pay. Any subsequent hours worked shall be paid at a rate of double (2x) time the regular rate of pay. Employees will not be penalized or otherwise discriminated against for refusing to work the make-up day.

## 3.02 MEAL PERIOD

(a) When overtime is worked <u>in conjunction</u> with the normal working hours, as set forth in 3.01, the Employee shall receive a one-half (1/2) hour meal period with pay, at the appropriate rate, after the first two (2) hours of <u>cumulative</u> overtime if work is to continue. Thereafter, a paid meal period of one-half (1/2) hour shall be provided every four (4) hours if work is to continue.

(b) When overtime is worked that is outside of, and <u>not in conjunction</u> with the normal working hours as set forth in 3.01, a meal period of thirty (30) minutes shall occur every four (4)

10

hours if work is to continue. The first designated meal period shall be on the employees time provided the Employee was given at least two (2) hours prior notice to report for work. Subsequent meal periods shall be paid at the appropriate rate.

(c) When meals are not readily available, the Employer shall allow one member of the crew time to obtain meals for the Employees prior to the meal period, providing the Employee did not receive notification of the overtime two (2) hours prior to reporting to work. Employees will be responsible for food expenses.

Clarification: Insofar as 3.02(a), (b) and (c) are concerned, time worked on a Saturday, Sunday, or a Holiday shall be the same as time worked on a normal workday.

Definition: "conjunction with" is an unbroken continuation either before or after the normal working hours.

### 3.03 OVERTIME REPORTING

No overtime work shall be performed without prior notification to the Business Manager or Steward by the Employer or Employee. The Employer or Employee shall notify the Business Manager or Steward prior to starting all overtime work naming men and job. At the completion of the overtime, the Business Manger or his office shall be notified that overtime is completed and state the length of the overtime. (831) 633-2311

### 3.04 WAGES

(a) Trade Classifications shall be: Journeyman Wireman, Journeyman Technician and Cable Splicer and shall be paid in accordance with the following wage pages.

(b) Zone Differential

(1) When Employees are directed by the Employer to report to the Employer's Shop, the Employer shall furnish transportation and pay for traveling time from shop to job, job to job, and job to shop.

(2) Zone A: Employees may be required to report directly to any job within Zone A, the free zone, on their own time and in their own transportation, at no cost to the Employer, at the regular starting time and shall work eight (8) hours on the job. Any Employer may also request the Union to dispatch applicants for employment under the referral procedure directly to any job within the free zone (Zone A), on their own and in their own transportation at no cost to the Employer.

(3) Zone B: Employees may be required to report directly to any job outside the free reporting zone listed above at the regular starting time, on their own time or in their own transportation, and shall work eight (8) hours on the job. Employees shall be required to report directly in their own transportation to only one (1) job per day. Employees reporting to such jobs shall be paid the following zone differential in addition to their normal wage rate.

(a) Zone B Differential – 10% of the Basic Journeyman Rate for jobs Located outside of Zone A.

(b) Employees required by the Employer to remain away from home Overnight shall receive eighty-five dollars ($85.00) per day, per diem.

### DEFINITIONS OF ZONE A AND B:

Zone A: All of Santa Cruz County, Monterey and San Benito Counties within twenty-five (25)

11

air-miles of Highway 1 and Dolan Road in Moss Landing, and an area extending five (5) miles east and west of Highway 101 South to the San Luis Obispo County Line.

Zone B:  Any area outside of Zone A described above.

(4)   Employers who do not have an established shop within the area covered

By this Agreement shall abide by the same travel requirement as other Employers performing work under this Agreement.

(5)   Time spent traveling in an Employer furnished vehicle prior to 8:00 a.m. and after 4:30 p.m. shall not be an expense to the Employer, provided the traveling is from the Employee's home to the job and from the job to the Employee's home.

(6)   The Employer shall provide transportation for all shop tools and materials.

Reference Article 3.04 (b) Zone Differential Hourly Rate:

|  | Zone B |
| --- | --- |
| Journeyman | $35.21 |
| Foreman | $39.21 |
| General Foreman | $43.21 |
| Cable Splicing | $39.21 |
| Jry. Tech. | $35.21 |
| Jry Welding | $38.41 |

Reference Article 3.04 (b) - $85.00 per day, per diem

NOTE: Health & Welfare, Education & Training, LMCC and Pension are paid on hours PAID, not hours worked. (Must reflect the overtime hours)

NOTE: Transmittals due by the 7th, late if not postmarked by the 15th.

### MONTEREY-SAN BENITO-SANTA CRUZ COUNTIES
### IBEW LOCAL 234 INSIDE AGREEMENT

3.04 (a) Continued WAGES - The minimum rate of wages shall be:

|  | Classification | Hrly Rate | H&W | Pens Fund | Ed & Trng | LMCC | NEBF | AMF | Total Cost |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Effective 07/14/2003 | Journeyman | $32.01 | $6.65 | $7.89 | $0.60 | $0.20 | 3.0% | 0.75% | $48.55 |
| Thru 12/28/2003 | Foreman 12.5% above Jry. | $36.01 | $6.65 | $7.89 | $0.60 | $0.20 | 3.0% | 0.75% | $52.70 |
|  | Gen. Foreman 25% above Jry. | $40.01 | $6.65 | $7.89 | $0.60 | $0.20 | 3.0% | 0.75% | $56.85 |
|  | Jry. Wireman while Splicing cable | $36.01 | $6.65 | $7.89 | $0.60 | $0.20 | 3.0% | 0.75% | $52.70 |
|  | Jry. Technician | $32.01 | $6.65 | $7.89 | $0.60 | $0.20 | 3.0% | 0.75% | $48.55 |
|  | Jry. Wireman while Welding 10% above Jry. | $35.21 | $6.65 | $7.89 | $0.60 | $0.20 | 3.0% | 0.75% | $51.87 |

## APPRENTICES

There shall be a minimum of ten periods of apprenticeship. Eighteen hundred (1800) hours shall constitute the probationary period. Each period will require the minimum amount of elapsed time, minimum accumulative OJT hours and related training as follows:

### APPRENTICE WIREMAN - TEN (10) PERIODS

| PERIOD | WAGES | RELATED TRAINING |
|--------|-------|------------------|
| 1ST | 45% of JW Rate | N/A |
| 2ND | 47% of JW Rate | Satisfactory Progress |
| 3RD | 55% of JW Rate | 1st yr. school completed |
| 4TH | 60% of JW Rate | Satisfactory Progress |
| 5TH | 65% of JW Rate | 2nd yr. school completed |
| 6TH | 70% of JW Rate | Satisfactory Progress |
| 7TH | 75% of JW Rate | 3rd yr. school completed |
| 8TH | 80% of JW Rate | Satisfactory Progress |
| 9TH | 85% of JW Rate | 4th yr. school completed |
| 10TH | 90% of JW Rate | Satisfactory Progress |
| Completion | 100% | 5th yr. school completed |

| Classification | Hrly Total Rate | H&W | Pens Fund | Ed & Trng | LMCC | NEBF | AMF | Cost |
|----------------|-----------------|------|-----------|-----------|------|------|------|------|
| 1st Period @ 45% | $14.40 | $6.65 | $0 | $0.60 | $0.20 | 3.0% | 0.75% | $22.39 |
| 2nd Period @ 47% | $15.04 | $6.65 | $0 | $0.60 | $0.20 | 3.0% | 0.75% | $23.05 |
| 3rd Period @ 55% | $17.61 | $6.65 | $1.08 | $0.60 | $0.20 | 3.0% | 0.75% | $26.80 |
| 4th Period @ 60% | $19.21 | $6.65 | $1.56 | $0.60 | $0.20 | 3.0% | 0.75% | $28.94 |
| 5th Period @ 65% | $20.81 | $6.65 | $2.56 | $0.60 | $0.20 | 3.0% | 0.75% | $31.60 |
| 6th Period @ 70% | $22.41 | $6.65 | $3.87 | $0.60 | $0.20 | 3.0% | 0.75% | $34.57 |
| 7th Period @ 75% | $24.01 | $6.65 | $4.44 | $0.60 | $0.20 | 3.0% | 0.75% | $36.80 |
| 8th Period @ 80% | $25.61 | $6.65 | $5.05 | $0.60 | $0.20 | 3.0% | 0.75% | $39.07 |
| 9th Period @ 85% | $27.21 | $6.65 | $6.04 | $0.60 | $0.20 | 3.0% | 0.75% | $41.72 |
| 10th Period @ 90% | $28.81 | $6.65 | $7.10 | $0.60 | $0.20 | 3.0% | 0.75% | $44.44 |

Scheduled Increases:

Effective 12/29/03, Distribution of $0.40 per hour to Wages, $0.10 to Pension and $0.25 to H&W

Effective 05/24/04, Distribution of $0.40 per hour to Wages, $0.10 to Pension and $0.25 to H&W

Effective 12/27/04, Distribution of $0.40 per hour to Wages, $0.10 to Pension and $0.25 to H&W

Effective 05/23/05, Distribution of $0.40 per hour to Wages, $0.10 to Pension and $0.25 to H&W

Effective 12/26/05, Distribution of $0.40 per hour to Wages, $0.10 to Pension and $0.25 to H&W

## 3.05 STARTING TIME ADJUSTMENT

(a)    The shop or job work day may be adjusted by two (2) hours from 3.01(a) with the half-hour (1/2) lunch break occurring four (4) hours from the start of the work day, after the approval has been received from the Union.

(b)    The adjustment shall be for no less than five (5) continuous working days at the shop or the job specified with the exception of service and maintenance work.

(c)    When the starting time is adjusted, other affected areas of the Agreement shall also be adjusted in keeping with the intent of the original contract language.

(d)    The Employer shall provide the Union with the names of all Employees reporting to the shop for an early start.

## 3.06 PAYDAY – TERMINATION SLIPS

(a)    Wages shall be paid weekly, the workweek shall end at 12:00 midnight on Sunday, and wages shall be paid before 4:30 p.m. on Wednesday.  Not more than three (3) days wages shall be withheld at any time.  Should payday fall on a day that the Employees do not work or only work part of the day, it shall be the responsibility of the Employer to have the paychecks available at the normal place of payment no later than 4:30 p.m. on the regular payday.  The payroll check stub, or accompanying statement, shall contain the complete payroll date – month, day, year, including company name and home office city, all deductions itemized and gross and net wages.

(b)  **LAYOFF** Any employee laid off or discharged by the Employer shall be paid his wages immediately and shall receive a termination slip.

(c)    (1) If an Employee provides notice, three-business day's prior of his intention to quit; the Employee is entitled to his wages at the time of quitting.

(2) In the event an Employee quits without prior notification, the Employer shall pay all wages due within three business days or the next payday whichever occurs first. The check shall be mailed to the address provided by the Employee unless other arrangements are agreed upon with the Employee, and an authorized office Employee; however, the intent of this section shall not be abrogated or ignored.

(d)    If the terms of section 3.06 (a), (b), or (c) are not complied with, waiting time at the regular rate of pay shall be charged until payment is made; however waiting time shall not exceed eight (8) hours in any one twenty-four (24) hour period.  When an employee is still employed or has returned to work or is drawing unemployment, a penalty of $50 per day shall be assessed.

(e)    The discharged Employee(s) shall check in all Employer's tools and materials and shall be allowed one-half (1/2) hour to pick up his own tools on Employer's time, and then shall leave the job site immediately.

## 3.07 DUES CHECK OFF

The Employer agrees to deduct and forward to the Financial Secretary of the Local Union, upon receipt of a voluntary written authorization, the additional working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## 3.08 GENERAL PROVISIONS

(a) LUNCH PERIODS WORKED Employees required to work during any regular lunch period shall receive the appropriate overtime rate for that period and then be granted a thirty (30) minute lunch period as soon as practical thereafter.

Exception to the above shall be as follows:

Two (2) Employees, one (1) of which may be an Apprentice, may have their meal period scheduled up to one-half (1/2) hour early in order to cover work to be performed during the regular scheduled meal period.

(b) UNSCHEDULED WORK Employees called to report for unscheduled work four (4) or more hours before the normal start time, shall be paid at the double time rate for all work performed on that call, on that day. A minimum of two hours at the double time rate shall be paid.

(c) Employees required to continue working beyond the regular workday, past 12:30 a.m. shall have at least an eight (8) hour break before returning to work.

(d) OVERTIME PREFERENCE When it is necessary to work overtime on any job covered by this Agreement, Employees working on the job shall be given first preference, except where an Employee with special skills or job knowledge is required, who shall be paid at the Foreman's rate.

(e) INJURIES – JOB RELATED When an Employee is injured on the job, and is required to leave the job to receive medical aid, his wages shall continue and he shall remain in the course and scope of employment until he returns to the job, is lodged in a hospital or is released to go home.

(f) EMPLOYEES FIFTY (50) YEARS OLD OR OLDER On all jobs requiring five (5) or more Journeymen, at least every fifth (5th) Journeyman, if available, shall be fifty (50) years of age or older.

## 3.09 SCOPE

Employees employed under the terms of this Agreement shall do all the construction, installation, cutting, fitting, binding and erection of electrical electronic work and all electrical electronic maintenance thereon, meggering, hy-potting, calibrating and setting of all meters, control devices, overloads, electronic devices, electronic systems, communication systems and all related control wiring, including the final running tests. This shall include the installation and maintenance of temporary wiring and the installation and maintenance of electrical lighting, heat, and power equipment. Welding, burning, brazing, bending, drilling and shaping for fabricating of materials used in connection with the installation and erection of electrical wiring and equipment shall be performed by Employees employed under the terms of this Agreement. All conduit, tubing and equipment shall be cut and fitted by Employees employed under the

terms of this Agreement. It shall be understood and agreed that the scope of work covered by this Agreement shall cover all of the electrical and other related work included in the specification of each and every job.

When a contractor has knowledge that a portion of the electrical work covered under this Agreement is not included under his work to be performed, the contractor shall notify the Union.

### 3.10 HOLIDAYS

(a)  All work performed on Sundays, and the following Holidays, days celebrated as such, or Building Trades Holidays shall be paid at double the straight rate of pay.

> New Years' Day, January 1;
>
> Martin Luther King, Jr.s' Birthday, observed third Monday in January;
>
> Presidents' Day, the third Monday in February;
>
> Memorial Day, the last Monday in May;
>
> Fourth of July;
>
> Labor Day, the first Monday in September;
>
> Veterans' Day, November 11;
>
> Thanksgiving Day, the fourth Thursday in November;
>
> The day after Thanksgiving Day;
>
> Christmas Eve, December 24;
>
> Christmas Day, December 25;
>
> New Years' Eve, December 31.

Any of the above designated holidays occurring on Sunday shall be observed on the following Monday. Any of the above-designated Holidays occurring on Saturday shall be observed the previous Friday.

(b)  Four (4) additional days each year shall be selected by mutual agreement as designated "Off Days". Designated Off Days shall be paid at double (2x) the straight time rate. Selection of Off Days will be coordinated with other Holidays to make four-day weekends or align with Holidays with other Building Trades.

(c)  **WORK PERFORMED ON FLOATING HOLIDAYS.** For Service and Maintenance Work (as defined below) Employers shall be allowed to have Employee(s) work on the "Designated OFF DAY" at the straight time rate of pay during the regular work hours provided the Employee does not work the following regular work day, otherwise the Employee shall be paid at the double (2x) time rate. The Employer shall notify the Union office in advance by leaving a message on the recorder or fax machine at the Union office.

Service and Maintenance Work shall be defined as trouble or service calls that are received to perform work that is necessary to maintain the operation of an existing electrical system.

### 3.11 LABOR DAY

No work shall be performed on Labor Day except in case of emergency and then only after permission is granted by the Business Manager of the Union.

16

### 3.12 SHOW UP PAY

**(a)** <u>LAID OFF</u> Any Employee reporting for work and being laid off, or any Employee not having been notified the day prior to a layoff, shall receive not less than four (4) hours wages.

**(b)** <u>BAD WEATHER</u> When Employees are directed to report to the shop or job and do not start work due to weather conditions or other causes beyond their control, they shall receive two (2) hours show-up time unless notified between a minimum of one hour prior to the start of the day to be worked. If an Employee is not available for notification (has not provided a telephone number where he can be reached, or cannot be reached at the number), the Employer shall notify the Union office; such call shall constitute notification.

   In lieu of the notification referred to above, the Employer may provide a toll-free message number, staffed by a live, identifiable person, for Employees to call and receive instructions at least two (2) hours before they are required to report for work.

**(c)** <u>DISPATCH</u> If an Employer rejects an applicant for employment who has no adverse employment history with that Employer and is otherwise prepared to commence work in a timely manner and within normal industry requirements, the applicant is entitled to a reporting expense allowance in the amount of two (2) hours straight time pay. If this expense cannot be paid at the time of rejection, it must be postmarked in the mail to the applicant at the Local Union office within twenty-four (24) hours unless mutually agreed that other arrangements have been made between the Employer and the applicant. This section shall not apply if there is on file with the Local Union office a current termination slip that this applicant is ineligible for rehire, as per Section 3.06(b).

### 3.13 PREVAILING RATE WORK

(a)   Labor agrees to provide protection for all prevailing wage jobs (both federal and state) bid after the date of adoption, by agreeing to perform the work at the rate established in this Agreement in effect at the time the job was bid, and to continue to cover the work at that rate until the job is completed or for a maximum of two (2) years, whichever comes first.

   Management assumes the responsibility to monitor the wage rates being advertised on all prevailing rate jobs and to work with Labor to assure that these advertised rates are correct.

**(b) Protection of Prevailing Wage jobs when the prevailing wage goes down**. If during the term of this Agreement, the Davis-Bacon prevailing wage rate is lowered as <u>the result of a wage survey causing the lowering of such prevailing wage rate</u>, subject to the requirements set forth below, all signatory contractors shall be permitted to bid future federal public works projects, not already awarded or bid, at the lower prevailing wage rate. If during the term of this Agreement, the state prevailing wage rate is lowered as the result of a wage survey causing the lowering of such prevailing wage rate, subject to the requirements set forth below, all signatory contractors shall be permitted to bid future state public works projects, not already awarded or bid, at the lower wage rate. Before a contractor is permitted to pay less than the contractual wage rate as the result of a wage survey lowering the prevailing wage rate as described above, the contractor must:

(1)  Give written notice to IBEW Local 234, and the Monterey Bay California Chapter, NECA, of said contractor's intent to bid a public works project and pay a prevailing wage rate which is less than the contractual wage rate, at least ten (10) working days prior to submitting any such bid; and

(2)  Received written verification from the parties to the Agreement that the lesser rate is the prevailing rate of pay for that project.

### 3.14 HIGHTIME

(a)  All Employees working on temporary staging, ladders, apparatus, devices and other structures that are not protected by a "permanent" guard rail or are within five feet (5') of a direct fall of forty (40) to eighty (80) feet or on wood poles at a distance from fifty-five (55) to seventy-five (75) feet, shall be paid at one and one-half (1 ½) times the straight time rate of pay for all such work performed during regular working hours.  On work in excess of eighty (80) feet, as defined above, they shall be paid at double (2x) the straight time rate of pay for all such work performed during regular working hours.

(b)  When the above described work is performed outside the regular working hours at forty (40) and eighty (80) feet, the rate shall be two and one-half (2 ½) times the straight time rate of pay.  When overtime work is performed in excess of eighty (80) feet, the rate of pay shall be three (3) times the straight time rate of pay.

An assignment of fifteen (15) minutes of work referred to in this section shall entitle the Employee to one (1) hour of premium pay.

### 3.15 HAZARD PAY

(a)  Where Employees are required to work under compressed air in excess of

five (5) pounds above normal atmospheric pressure, or in areas where injurious gasses, dust, obnoxious fumes or spray painting are present in amounts necessitating the use of gas masks or respirators as required by OSHA or MSHA standards, they shall be paid an additional hazard bonus of one-half (1/2) the straight time rate of pay.

(b)  When Employees are required to work where other than climatic

temperatures exceed one hundred and thirty (130) degrees F., maximum, or twenty (20) degrees minimum, they shall be paid an additional hazard bonus of one-half (1/2) times the straight time rate of pay.

An assignment of two (2) hours or more of work referred to in this Section shall entitle the Employees to the applicable premium rate for that half day.

### 3.16 SHIFT WORK

When so elected by the contractor, multiple shifts of at least five (5) days' duration may be worked.  When two (2) or three (3) shifts are worked:

The first shift (day shift) shall be worked between the hours of 8:00 A.M. and 4:30 P.M.  Workmen on the "day shift" shall receive eight (8) hours' pay at the regular hourly rate for eight (8) hours' work.

The second shift (swing shift) shall be worked between the hours of 4:30 P.M. and 12:30 A.M.  Workmen on the "swing shift" shall receive eight (8) hours' pay at the regular hourly rate plus 10% for seven and one-half (7 1/2) hours' work.

The third shift (graveyard shift) shall be worked between the hours of 12:30 A.M. and 8:00 A.M. Workmen on the "graveyard shift" shall receive eight (8) hours' pay at the regular hourly rate plus 15% for seven (7) hours' work.

A lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required after the completion of a regular shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

### 3.17 FOREMAN

(a)    All foremen and general foremen shall have the trade classification and qualification of journeyman wireman.

(b)    No foreman shall give orders to or take orders from another foreman. On all jobs requiring foremen, a foreman shall only give orders to Employees under his direct supervision. Likewise, Employees shall take orders from their appointed foreman only.

No foreman of one job shall, at the same time, perform or supervise work on another job. The only exception to the above is in case of an emergency.

(c)    Any job on which four (4) or more Employees under this Agreement are employed, shall require a foreman. A foreman shall not supervise over ten (10) Employees. Another foreman shall be named as soon as additional Employees are employed.

(d)    On any job requiring four (4) or more Employees, employed under this Agreement for more than fifteen (15) days continuously or accumulatively, the foreman's rate of pay shall continue until the completion of the job, regardless of whether four (4) Employees remain for the duration of the job.

(e)    A Job General Foreman shall not supervise more than six (6) foremen. Whenever a job has two (2) or more foremen, a Job General Foreman shall be assigned to that job only. A Job General Foreman shall not give orders to anyone other than the foremen under his direct supervision. Another General Foreman shall be named as soon as additional foremen are appointed. A Job General Foreman shall not work with the tools except in case of extreme emergency.

(f)    An Area General Foreman may be assigned to any combination of jobs provided that none of the jobs require a second foreman and the total number of Employees under supervision does not exceed forty (40). An Area General Foreman shall not give orders to anyone other than the foremen under his direct supervision, unless he has also been assigned to a job that does not require a foreman (see Article 3.17 (c)). In this case, the Area General Foreman may give orders to any Employee under his direct supervision. An Area General Foreman shall not work with the tools except in case of extreme emergency.

This section is not intended, nor shall it be used to circumvent any other sections of Article 3.17 as they pertain to Foreman or General Foreman ratios on any individual job site.

### 3.18 TOOLS – EMPLOYEE PROVIDED

Journeymen shall be required to furnish the following kit of hand tools for the performance of their work.

| | |
|---|---|
| TOOL BOX | With locking device 20" x 8 ½ " x 9 minimum, with locking device |
| PLIERS | Sidecutters 8" or 9" Klein type, long nose, diagonal Cutters (2 allowed), pump (channel lock) (2 allowed) Wire strippers |
| PIPE WRENCH (1) | Not over 14", small chain tongs accepted |
| CRESCENT WRENCHES (2) | 2 allowed 6" and 12" (one of each) |
| ALLEN WRENCHES | Small set not over ¼" |
| TAP WRENCH | Up to ¼" |
| 3/8" SOCKET SET | Up to ¾" or set of Spin Tite |
| CHISEL (1) | Wood ¾" |
| CENTER PUNCH | |
| AWL | |
| PLUMB BOB (1) | 8 oz. |
| COMBINATION SQUARE (1) | 12" maximum |
| LEVEL (1) | 12" maximum |
| CHALK LINE BOX (Optional) | |
| TIN SNIPS (1) | 10" maximum |
| KNIFE (1) | |
| RULES (2) | 30 ft. tape and/or 6 ft. folding rule |
| SCREWDRIVERS (4) | Stubby (2) 1 Blade and 1 Philips |
| Philips (2) 6" and 8" | |
| Blade (3) 6", 8" and 12" | |
| SCREWDRIVERS | Insulated blade and Philips |
| HACKSAW FRAME (1) | Adjustable (only) |
| KEYHOLE or SHEET ROCK SAW | Handle (only) |
| HAMMER (1) | Claw |
| TESTER (1) | Category III, 1000v Minimum |
| TOOL POUCH (Optional) | |
| FLASHLIGHT (1) | One-piece |
| CODE BOOK | National Electrical Code |
| PENCIL | |
| CONTINUITY TESTER (Optional) | |

Apprentices, during the first year of indenture, shall supply at least the following tools:

| | |
|---|---|
| TOOL BOX | With locking device 20" x 8 ½ " x 9 minimum with locking device |
| PLIERS | Sidecutters 8" or 9" Klein type, long nose, diagonal Cutters (2 allowed), pump (channel lock) (2 allowed) Wire strippers |
| PIPE WRENCH (1) | Not over 14", small chain tongs accepted |
| CENTER PUNCH (1) | |
| LEVEL (1) | 12" maximum |
| KNIFE (1) | |
| RULES (2) | 30 ft. tape and/or 6 ft. folding rule |
| SCREWDRIVERS (4) | Stubby (2) 1 Blade and 1 Philips |
| Philips (2) 6" and 8" | |
| SCREWDRIVERS | Insulated blade and Philips |
| Blade (3) 6", 8" and 12" | |
| HACKSAW FRAME (1) | Adjustable (only) |
| HAMMER (1) | Claw |
| PENCIL | |

Apprentices, during the last year of their indenture, shall be required to carry a journeyman's kit of hand tools.

## 3.19 TOOLS – EMPLOYER PROVIDED

(a)  The Employer shall furnish all other necessary tools and equipment to do the job. Journeymen shall be responsible for storage of Employer's tools if storage space is provided. The Employer shall be financially responsible in an amount not to exceed eight hundred dollars ($800.00) for the loss of an employee's tools and/or tool box by fire or theft where substantial evidence of loss is established, providing that at the time of loss said tools were locked in the "suitable safe place or locked box" as provided by the Employer. When the Employer does not provide a locked safe building, room, tool shed or a job box for the safe storage of the employee's tools, and when the tools are in the care, control and custody of the Employer or his representative, the Employer shall be responsible for the complete replacement of the employee's tools to the extent as covered above. The above replacement value of tools shall be established per item at the beginning of the term of each Agreement. Written notice for reimbursement must be submitted to the Employer within five (5) days from the date of knowledge by the employee of such loss. The Employer shall effect such reimbursement within four (4) working days of submittal of such claim of tools lost by fire or theft. The contractor shall pay a penalty of $20.00 per day for each day of non-reimbursement after the 4th working day after notice. Employee will sign receipt for tool reimbursement.

## (b) EMPLOYEE RESPONSIBILITY FOR EMPLOYER'S TOOLS

Employees under this Agreement shall not use the Employer's property such as tools, for other than the Employer's business, except as may be herein provided. If any Employee loses or through negligence, damages or destroys the Employer's tools, the Employee shall repair, replace or compensate the Employer for such loss or actual damage sustained. Any disputes arising out of this section shall be resolved by the Labor-Management Committee.

## (c)  HARD HATS

The Employer shall provide and maintain all hard hats. Upon receiving a hard hat the Employee assumes the responsibility of seeing that he does not lose or intentionally render the hat unusable. Sweatbands will be replaced twice a year or upon presenting proof of a broken band. A hard hat that is broken or damaged will be replaced if turned in.

## 3.20 WORKMANSHIP

(a)  Employees shall install all electrical work in a safe and workmanlike manner in accordance with applicable code and contract specifications.

(b)  A Journeyman shall be required to make corrections (labor only) on improper workmanship for which he is responsible on his own time and during regular working hours unless errors were made by the order of the Employer, or the Employer's representative. Employer shall notify the Union and the Chapter of the Journeyman who fails to adjust improper workmanship and the Union assumes responsibility for the enforcement of this provision for its members only. Corrections to be made only after a fair investigation by the Employer and the Business Manager of the Union.

### 3.21 WELDING

(a)  An Employee who is required to weld shall receive a bonus of 10% of the Journeyman base rate per hour, for the number of hours worked.

(b)  Where Certified Welders are required, they shall receive a bonus of 15% of the Journeyman base rate per hour, for the number of hours worked.

(c)  The time and expense of Certified Electrical Welders having to take additional certification test if required by the Employer, shall be paid for by the Employer.

### 3.22 CABLE SPLICING

All work of joining, splicing, and insulating and placing of the flame-proof covering, where wiped lead joints are necessary, and on all splices over 2300 volts between any two (2) conductors on synthetic cable, shall be performed by cable splicers. Only Journeymen shall be used in assisting cable splicers. When a Journeyman is used to assist the cable splicer and provided the assistant is not required to perform work of a technical nature, the assistant may be paid at the Journeyman rate. Cable splicers shall not be required to work on wires or cable when the difference in potential is over three hundred (300) volts between any two (2) conductors or between any conductor and ground, unless assisted by another Journeyman. In no case, shall cable splicers be required to work on energized cables carrying in excess of four hundred and forty (440) volts.

### 3.23 PAID PARKING

Where free parking is not available at the job or project, the Employer shall reimburse the Employees for their parking costs. The employer may elect to furnish transportation from a central location.

Where the employer provides transportation, the employee will ride in on his/her time and will ride out on the employer's time. The applicable rate of pay shall apply.

### 3.24 TRANSPORTATION

Adequate and safe transportation furnished by an Employer for transportation of Employees within the jurisdiction of Local 234 shall be by nationally or internationally manufactured vehicles with no additional seating arrangement other than the manufacturer's passenger seating rating. Converted trucks **are** not acceptable.

### 3.25 TRUCK SIGNS

All trucks or vehicles used to transport Employees or materials or used in connection with the operation of any firm, other than those operated by management, shall have permanent* signs or decals with letters at least three inches (3") high, stating the firm's name, affixed to the exterior surface of the right and left sides in contrasting color and in English. The vehicle state registration slip shall conform to the requirements of the State of California. Temporary signs shall be used on vehicles not owned by the Employer for up to twenty (20) consecutive working or thirty (30) calendar days.

*Permanent – Meaning difficult to remove. Magnetic stick-on signs are not permitted

### 3.26 SAFETY

(a)  The Employer agrees to abide by all applicable local, State and Federal health, safety and sanitary regulations. In the event that there are conditions, which are detrimental to

the Employee's health or safety, the Employee shall not be required to work under such conditions.

(b)    It is the Employer's exclusive responsibility to ensure the safety of its Employees and their compliance with these safety rules and standards.

(c)    On all energized circuits carrying four hundred and forty (440) volts or over, as a safety measure, two (2) or more journeymen must work together, one (1) standing by, wearing certified rubber gloves.

(d)    Adequate safety protective devices shall be supplied to Employees by the Employer on all hazardous and wet work, which shall comply with the applicable law and regulations and the rules of the Union. They shall also observe instructions of the Employer in the matter of safety, provided such instructions are not in conflict with the applicable law and regulations and recognized practices of the trade.

### 3.27 OFF SHORE DRILLING

(a)    An additional eighteen percent (18%) per hour shall be paid to all Employees

for work on all off-shore installations away from the mainland when the Employees are required to remain away from home overnight, plus room and board. The contractor shall also furnish towels soap and linens daily. Clean sterilized blankets shall be furnished at the beginning of each job and every thirty (30) days thereafter. All Employees will be furnished with a locker and at least one hundred (100) square feet of living quarters which shall comply with applicable law and regulations. Only Employees working under the terms of this Agreement shall be housed together. When working under the terms of this Agreement, Employees shall eat their meals in the facilities provided them by a civilian catering service when available.

(b)    When Employees are required to remain away from home overnight they

Shall receive no less than eight (8) hours pay per day.

(c)    The point of embarkation for all off-shore facilities shall be considered job site

for the purpose of establishing working hours and/or daily travel expense. The Employer shall be responsible for belongings left at the point of embarkation.

### 3.28 TUNNEL, TUBE, CAISSON AND BORE WORK

(a)    Work Day, Work Week, Wages and Working Conditions shall be the same as

Those set forth in the Inside Agreement with the following exceptions:

(1)    The week shall be a forty (40) hour week, Monday through Friday.

(2)    Change of work hours shall be a provision of this section.

(3)    The workday including Shift Work shall start and end at the change house, provided it is located adjacent to a suitable parking lot, otherwise from such a parking lot.

(b)    Wages

(1)    The minimum hourly rates of pay in any tunnel or shaft shall be 2% over

and above the basic wage rate set forth in the regular Wage Section.

(2)    The minimum hourly rate of pay for anyone assigned to work at the

Heading shall be 15% over and above the basic wage rate set forth in the regular

Wage Section.

(c) Foremen in addition to the minimum set forth elsewhere in this Agreement shall be maintained in order to properly supervise the crew(s) and in order to maintain health and safety.

(d) Conditions of Work

(1) Whenever there is electrical work, including temporary power and lighting Done or maintained in or about a tunnel, shaft or adit, tube, caisson or bore, it shall be done by Employees covered by this Agreement. Employees shall take orders from assigned supervisors and cooperate with the shift supervisor.

(2) Whenever a shift crew or major portion thereof is working in the tunnel, Tube, caisson, or bore, an Employee shall work, except when only hand mucking and/or clean up is in progress, and providing no blasting is being done. Employees shall take orders from assigned supervision and cooperate with shift supervision.

(3) When two (2) headings are being worked from one (1) adit or shaft, Employees shall be assigned to each shift, and one (1) to each heading when the distance makes it impossible for one Employee to do all the electrical work on both headings.

(4) Employees shall not be required to enter the heading after a blast until all the requirements of the State Safety Codes have been complied with.

(5) The Employer shall furnish all rubber and protective clothing without Charge when required by working conditions. Employees shall be responsible for clothing and rubber goods issued to him, and shall return same to Employers at the time of termination.

(6) All Employees shall receive eight (8) hours pay as a minimum per shift worked.

(e) In addition to the safety provisions set forth elsewhere in this Agreement, all Electrical work being performed under the terms of this supplement shall be governed by applicable law and regulations.

## ARTICLE IV

## REFERRAL PROCEDURE

**Section 4.01.** In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

**Section 4.02.** The Union shall be the sole and exclusive source of referral of applicants for employment.

**Section 4.03.** The Employer shall have the right to reject any applicant for employment.

24

**Section 4.04.** The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure.

**Section 4.05.** The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below. Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

## JOURNEYMAN WIREMAN — JOURNEYMAN TECHNICIAN

**GROUP I** All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee, <u>and,</u> who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

**GROUP II** All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III** All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, <u>and</u> who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV** All applicants for employment who have worked at the trade for more than one year.

**Section 4.06.** If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure but such applicants, if hired, shall have the status of "temporary employees".

**Section 4.07.** The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

**Section 4.08.** "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Monterey, Santa Cruz, and San Benito Counties in the State of California.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage area under the Davis-Bacon Act to

25

which the Agreement applies.

**Section 4.09.** "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

**Section 4.10.** An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the I.B.E.W. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

**Section 4.11.** The Union shall maintain an "Out of Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

**Section 4.12.** An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

**Section 4.13.** Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in Group I in the order of their place on the "Out of Work List" and then referring applicants in the same manner successively from the "Out of Work List" in Group II, then Group III, and then Group IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within his Group and shall be referred to other employment in accordance with the position of his Group and his place within his Group.

**Section 4.14.** The only exceptions which shall be allowed in this order of referral are as follows:

(a). When the Employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b). The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

**Section 4.15.** An Appeals Committee is hereby established composed of one member appointed by the Union, one member appointed by the Employer or the Association, as the case may be, and a Public Member appointed by both these members.

**Section 4.16.** It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4.04 through 4.15 of the Agreement. The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union. The Appeals Committee is authorized to issue procedural rules for the conduct of its business but it is not authorized to add to, subtract from, or modify any of the provisions

of this Agreement and its decisions shall be in accord with this Agreement.

**Section 4.17.** A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

**Section 4.18.** A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

**Section 4.19.** Apprentices shall be hired and transferred in accordance with the Apprenticeship provisions of the Agreement between the parties

## ARTICLE V
## STANDARD INSIDE APPRENTICESHIP LANGUAGE
### 5.01 JOINT APPRENTICESHIP AND TRAINING COMMITTEE (JATC)

There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 members who shall also serve as trustees to the local apprenticeship and training trust. An equal number of members (3) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (unindentured, intermediate journeymen, etc.).

### 5.02 MEMBERS OF THE JATC

All JATC member appointments, reappointments and acceptance of appointments shall be in writing. Each member shall be appointed for a three (3) year term, unless being appointed for a lesser period of time to complete an unexpired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent or they voluntarily resign. All vacancies shall be filled immediately.

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

### 5.03 DUTIES OF THE JATC

Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation and resolve; as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

27

## 5.04 DUT.   OF SUBCOMMITTEES

There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

## 5.05 TRAINING DIRECTOR

The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualification, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

## 5.06 TRANSFER OF APPRENTICES

To help ensure diversity of training, provide reasonable continuous employment opportunities and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job-training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprentices with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

## 5.07 ENTRANCE TO THE PROGRAM

All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures.

An apprentice may have their indenture cancelled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

## 5.08 NUMBER OF APPRENTICES

The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the job site ratio as per Section 5.12.

## 5.09 ATTEMPT TO SUPPLY APPRENTICES

Though the JATC cannot guarantee any number of apprentices; if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available

28

person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

## 5.10 UNINDENTURED WORKERS

To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualifications for apprenticeship. Unindentured workers shall not remain employed if apprentices become available for OJT assignment. Unindentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the unindentured person must sign a letter of understanding with the JATC and the employer – agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an unindentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

## 5.11 BENEFITS FOR APPRENTICES

The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured. Contributions to other benefit plans may be addressed in other sections of this agreement.

## 5.12 APPRENTICE RATIO

Each job site shall be allowed a ratio of (2) apprentices for every (3) Journeyman Wiremen.

| Number of Journeymen Apprentices/Unindentured | Maximum Number of |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| etc. | etc. |

The first person assigned to any job site shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

## 5.13 SUPERVISION OF APPRENTICES

An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by

29

the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

### 5.14 COMPLETION OF APPRENTICESHIP

Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

### 5.15 JOINT APPRENTICESHIP AND TRAINING TRUST FUND AGREEMENT

The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

### 5.16 EDUCATION AND TRAINING TRUST FUND CONTRUBUTIONS

All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the local apprenticeship and training trust agreement. The current rate of contributions is $0.60 per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

### ARTICLE VI

### Vacation

### 6.01 VACATION

(a) All Employees may take a minimum of two (2) week vacation each year. The Employer shall be given fifteen (15) days notice prior to starting the vacation unless a shorter notification is mutually agreed upon between the Employer and the Employee.

(b) Not more than twenty percent (20%) of the Employees in any shop or any job shall be granted their vacation at the same time unless agreed to by the Employer.

## ARTICLE VII
### Health and Welfare Plan

### 7.01 HEALTH AND WELFARE TRUST FUND CONTRIBUTIONS

The Employer agrees to pay the sum indicated on the effective wage page of this agreement per hour for each hour paid to all Employees working under the terms of this Agreement to the Electrical Workers Health and Welfare Trust Fund. These payments shall be paid monthly on transmittal forms furnished by the Union. Contributions are payable on or before the seventh (7th) day of the month following the month in which the work was performed. Contributions not delivered to the office of the IBEW on or before the fifteenth (15th) day of the month or postmarked on or before the fifteenth (15th) of that month, regardless of what day of the week the fifteenth (15th) is on, shall be considered delinquent. Contributions shall be made on behalf of all Employees working under the terms of this Agreement on the payroll for all payroll weeks ending within the calendar month.

The parties hereto agree to continue in effect, the Electrical Workers Health and Welfare Trust Fund executed December 1, 1971, as last restated December 11, 1975. The parties agree to be bound by all of the terms and conditions of said amended Agreement and Declaration of Trust, and each Employer contributing to said Trust hereby agrees that by so doing, he does irrevocably designate and appoint the Employer designated Trustees appointed pursuant to said amended Agreement and Declaration of Trust, as Trustees authorized to act in his behalf pursuant to such trust agreement and irrevocably ratifies the designation, selection, appointment, removal and substitution of said Trustees as provided in said amended Agreement and Declaration of Trust.

If the Trustees deem it necessary to increase the amount of contributions to the plan, written notice shall be sent to the signatory parties.

## ARTICLE VIII
### Educational and Training Fund

### 8.01 EDUCATIONAL AND TRAINING FUND CONTRIBUTIONS

The Employer agrees to pay the sum indicated on the effective wage page of this agreement per hour for each hour paid to all Employees working under the terms of this Agreement to the International Brotherhood of Electrical Workers Union, Local 234 Educational and Training Fund. These payments shall be paid monthly on transmittal forms furnished by the Union. Contributions are payable on or before the seventh (7th) day of the month following the month in which the work was performed. Contributions not delivered to the office of the IBEW on or before the fifteenth (15th) day of the month or postmarked on or before the fifteenth (15th) of that month, regardless of what day of the week the fifteenth (15th) is on, shall be considered delinquent. Contributions shall be made on behalf of all Employees working under the terms of this Agreement on the payroll for all payroll weeks ending within the calendar month.

Parties hereto agree to continue in effect, the International Brotherhood of Electrical Workers Union, Local 234 Educational and Training Fund executed December 1, 1971, as last restated December 10, 1975. The parties agree to be bound by all of the terms and conditions of said

31

amended Agreement and Declaration of Trust, and each Employer contribution to said Trust hereby agrees that by so doing, he does irrevocably designate and appoint the Employer designated Trustees appointed pursuant to said amended Agreement and Declaration of Trust, as Trustees authorized to act in his behalf pursuant to such trust agreement and irrevocably ratifies the designation, selection, appointment, removal and substitution of said Trustees as provided in said amended Agreement and Declaration of Trust.

## ARTICLE IX

### Pension Plan

### 9.01 PENSION PLAN CONTRIBUTIONS

The Employer agrees to pay the sum indicated on the effective wage page of this agreement per hour for each hour paid to all Employees working under the terms of this Agreement to Local 234 Retirement Fund, according to their classification. These payments shall be payable on or before the seventh (7th) day of the month following the month in which the work was performed. Contributions not delivered to the office of the IBEW on or before the fifteenth (15th) day of the month or postmarked on or before the fifteenth (15th) of that month, regardless of what day of the week the fifteenth (15th) is on, shall be considered delinquent. Contributions shall be made on behalf of all Employees working under the terms of this Agreement on the payroll for all payroll weeks ending within the calendar month.

The parties hereto agree to continue in effect, the Local 234 Electrical Workers Retirement Fund executed September 30, 1977. The parties agree to be bound by all of the terms and conditions of said Agreement and Declaration of Trust, and each Employer contributing to said Trust hereby agrees that by so doing, he does irrevocably designate and appoint the Employer designated Trustees appointed pursuant to said Agreement and Declaration of Trust, as Trustees authorized to act in his behalf pursuant to such trust agreement and irrevocably ratifies the designation, selection, appointment, removal and substitution of said Trustees as provided in said Agreement and Declaration of Trust.

## ARTICLE X

### NEBF Agreement

### 10.01 NEBF AGREEMENT

It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3%) of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of the calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report

shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employee Benefit Agreement and Trust.

An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his Labor Agreement.

## ARTICLE XI

### Industry Fund

### 11.01 INDUSTRY FUND

Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll as determined by each local Chapter and approved by the Trustees, with the following exclusions:

    1)    Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year but not exceeding 150,000 man hours.

    2)    One hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages including overtime paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

## ARTICLE XII

### Monterey Bay Area Labor Management Cooperative Fund

### Section 12.01.

The parties agree to participate in a Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

1) to improve communications between representatives of Labor and Management;

2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;

6) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

7) to engage in public education and other programs to expand the economic development of the electrical construction industry;

8) to enhance the involvement of workers in making decisions that affect their working lives; and

9) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

## Section 12.02.

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the LMCC, as provided in said Agreement and Declaration of Trust.

## Section 12.03.

Each employer shall contribute twenty-cents ($0.20) per hour. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Monterey Bay California Chapter, NECA, or its designee, shall be the collection agent for this Fund.

## Section 12.04.

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

34

## ARTICLE XIII
## ADMINISTRATIVE MAINTENANCE FUND

### 13.00 Administrative Maintenance Fund

Effective June 1, 1997, all employers signatory to this labor agreement with the Monterey Bay California Chapter NECA shall contribute an amount equal to .75% of the gross monthly labor payroll paid to each employee covered by this labor agreement to the Administrative Maintenance Fund. The moneys are for the purpose of administration of the collective bargaining agreement, grievance handling, and all other management duties and responsibilities in this agreement. The fund is to be administered solely by the employers and enforcement for delinquent payments to the fund shall be the sole responsibility of the fund or the employers and not the Local Union. No part of the funds collected under this trust shall be used for any purpose which is held to be in conflict with the interests of the International Brotherhood of Electrical Workers and its local unions.

## ARTICLE XIV
## Transmittal Forms

### 14.01 TRANSMITTAL FORM

(a)   The Monthly Transmittal shall cover every Employee subject to this Agreement on the payroll for all payroll weeks ending within the calendar month.

(b)   Transmittal Form. On the monthly Transmittal form, the following information concerning each Employee shall be set forth in separate columns:

    1.   Social Security number

    2.   Name of Employee

    3.   Total clock hours

    4.   Gross earnings

    5.   Rate of pay per hour

    6.   Straight time hours

    7.   Overtime Time & One-Half hours

    8.   Overtime Double Time

    9.   Equivalent straight time hours

Column 9 times column 5 must equal column 4

(c)   The monthly Transmittal Form that is furnished by the Union and the checks that are required to accompany the form are due by the seventh (7th) of the month following the month that the work was performed in, and are delinquent if not delivered to the office of the IBEW on or before the fifteenth (15th) of that month or postmarked on or before the fifteenth (15th) of that month, regardless of what day of the week the fifteenth (15th) is on.

The Transmittal Form shall be mailed to the address indicated on the form.

## 14.02 ROUNDING

"Hours" of less than sixty (60) minutes shall be expressed as a decimal as follows: ¾ as .75, ½ as .50, ¼ as .25. The minimum unit of time to be expressed on the transmittal shall be .25 of an hour of multiples of .25, shall not be carried beyond two places.

The final calculation on partial hours as well as full hours shall be to the next full penny per individual, per month.

## 14.03 FAILURE TO PAY BENEFIT

(a)   Any Employer who fails to meet his obligation to make the payment of the moneys in the amounts indicated as being due under the Contract in a timely manner on the Monthly Transmittal forms as provided, shall in addition to posting a Surety Bond, be required to make weekly payments to the Tri-County Electrical Trust Funds of the moneys due for the hours paid on all his Employees for the week just completed. The payment shall be mailed by the Friday following the Thursday payday of each workweek, and shall be accompanied with an unofficial break-down of the hours and amounts for each category listed on the Monthly Transmittal that will follow.

The Monthly Transmittal (form MPR-176) shall accompany the check that provides for the payment that covers the last pay week of each month.

(d)   When an Employer is placed under the Provisions as set forth in (a) above, all checks shall be in the form of assured or certified checks.

(e)   The conditions set forth in 13.03 (a) & (b) above shall continue until the Employer proves that he has the ability to meet his obligations, but in no event shall it be for less than three (3) months.

## ARTICLE XV
## NATIONAL LABOR MANAGEMENT COOPERATION COMMITTEE

## 1.01 ESTABLISHMENT OF THE TRUST

The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purpose of this fund include the following:

(a)   to improve communication between representatives of labor and management;

(b)   to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organization effectiveness;

(c)   to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(d)   to study and explore ways to eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(e)   to sponsor program which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

36

(f)     to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

(g)     to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(h)     to engage in public education and other programs to expand the economic development of the electrical construction industry;

(i)     to enhance the involvement of workers in making decisions that affect their working lives; and

(j)     to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

## 1.01 NATIONAL LABOR MANAGEMENT COOPERATIVE COMMITTEE

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

## 1.02 CONTRIBUTION AMOUNT

Each Employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the first day of the month in which the labor was performed. The Monterey Bay California Chapter, NECA, or its designee, shall be the collection agent for this Fund.

## 1.03 DELINQUENT PAYMENT

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal of 15% of the delinquent payment, but not less than the sum of twenty dollars ($20.00), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## 15.05

The 1 cent-per-hour contribution for the National LMCC is to be paid from the Local LMCC Fund. There will be no increase in the wage/fringe package for this contribution.

## ARTICLE XVI

### Savings Clause

**16.01 SAVINGS CLAUSE**
Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall thereupon seek to negotiate substitute provisions which are in conformity with the applicable laws.

## INSIDE AGREEMENT

**NOTE:** The following Articles and Sections contained in this Agreement were revised to conform to IBEW/NECA Category One language: The First Clause, Article V Sections 5.01, 5.08, 5.09 and 5.12 and Article XI, Section 11.01. These revisions were made effective as of the dates below:

**SIGNED FOR THE EMPLOYER:**
The Monterey Bay California
Chapter, N.E.C.A., Inc.

**SIGNED FOR THE UNION:**
International Brotherhood
of Electrical Workers,
Local 234

_Paul Lauesen_     Date 3/18/04     _Randall Harris_     Date 5-18-04
Paul Lauesen,                        Randall Harris,
President                            President

_Michael Bryant_     Date 3/23/04     _James R. Nichols_     Date 3/18/04
Michael Bryant     James R. Nichols,
Chapter Manager     Business Manager and Financial Secretary

APPROVED
INTERNATIONAL OFFICE - I.B.E.W.

APR 1 5 2004

Edwin D. Hill
This approval seal assures...
International Security - I.B...

# INDEX

Administrative Maintenance Fund ...............................................
Apprentices ..................................................................... 35
Basic Principles ............................................................... 13
C.I.R. .............................................................................. 01
Changes ........................................................................... 02
Educational and Training Fund Contributions ..................... 02
Effective Date .................................................................. 31
Employee Responsibility for Employer's Tools ................... 02
Employer Rights ............................................................... 21
Fringe Benefit Remedy ..................................................... 03
Grievances/Disputes ........................................................ 05
Health and Welfare Plan ................................................... 02
Holidays ........................................................................... 31
Hours ................................................................................ 16
Industry Fund .................................................................. 09
Inside Agreement ............................................................. 33
JATC ................................................................................ 38
Journeyman Wireman – Journeyman Technician ................. 27
Layoff ............................................................................... 25
Monterey Bay Area Labor Management Cooperative Fund ... 14
National Labor Management Cooperation Committee ........... 33
NEBF Agreement ............................................................. 36
Overtime Reporting ......................................................... 32
Pension Plan .................................................................... 11
Referral Procedure .......................................................... 32
Saving Clause .................................................................. 24
Shift Work ........................................................................ 38
Standard Inside Apprenticeship Language ....................... 18
Termination of Agreement ............................................... 27
Tools – Employee Provided ............................................. 05
Tools – Employer Provided ............................................. 19
Transmittal Forms ........................................................... 21
Union Rights .................................................................... 35
Vacation .......................................................................... 03
Wage Payments ............................................................... 30
Wage Schedule ................................................................ 11
Working Conditions ........................................................ 12
.......................................................................................... 9

EXHIBIT B

EXHIBIT B

IBEW 234

# LETTER OF ASSENT – A

In signing this letter of assent, the undersigned firm does hereby authorize [1]  MONTEREY BAY CALIFORNIA CHAPTER

N.E.C.A., INC.

as its collective bargaining representative for all matters contained in or pertaining to the

current and any subsequent approved [2]  INSIDE

labor agreement between the

[1] MONTEREY BAY CALIFORNIA CHAPTER N.E.CA., INC.

and Local Union [3]  234  IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4]  23  day of

JUNE  2004 . It shall remain in effect until terminated by the undersigned employer giving written notice to the

[1] MONTEREY BAY CALIFORNIA CHAPTER N.E.C.A., INC.

and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

## SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

[5] VILLA ELECTRIC
Name of Firm

449 West D Street, Ste A-1
Street Address/P.O. Box Number

Lemoore, CA 93245
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: 68-D239260

SIGNED FOR THE EMPLOYER:

BY [7] *Lazaro L. Villa (original signature)*

NAME [8] Lazaro Lee Villa

TITLE/DATE  CEO   7/5/04

APPROVED
INTERNATIONAL OFFICE · I.G.E.W.
JUL 30 2004
Edwin D. Hill, President
This approval does not make the
International a party to this agreement.

SIGNED FOR THE UNION [3]  234  IBEW

BY [7] *James R. Nichols (original signature)*

NAME [8] James R. Nichols

TITLE/DATE BM  July 12, 04

### INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

EXHIBIT C

EXHIBIT C

RECEIVED

APR 17 2007

Neyhart, Anderson,
Flynn & Grosboll

## SETTLEMENT AGREEMENT

1.    VILLA ELECTRIC, INC. ("Villa") and the I.B.E.W. Local 234 – Tri-County Electrical Workers Trust Funds ("Trusts or Funds") (hereinafter collectively referred to as the "parties") have reached a settlement agreement of a dispute involving unpaid delinquent employer contributions required by the collective bargaining agreement between Local 234 of the International Brotherhood of Electrical Workers, AFL-CIO and the Monterey Bay Chapter of the National Electrical Contractor's Association, Inc.  This Settlement Agreement addresses a dispute arising under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a), (e) and (g) and § 1145.

2.    Villa agrees that it owes $8,692.49 in principal and liquidated damages, as well as at least another $1,000.00 due to daily accruing interest and additional attorney's fees and costs associated with a payroll audit for the period of August 4, 2005 through and including December 31, 2006.  As a result, Villa agrees that it owes EISB a total of at least $9,692.49 associated with its delinquency.  Villa agrees to the following payment schedule with the Trusts:

   a.    <u>Monthly Payments</u>.  Villa agrees to make <u>monthly</u> payments of not less than $1,000.00 for a period of nine (9) months or $9,000.00 total and the balance of $692.49 plus any additional interest on principal amounts due shall waived provided timely receipt of monthly payments in accordance with ¶2, subparagraph b of this Settlement Agreement.  Each check will be mailed to the Trusts' legal counsel:

   Scott M. De Nardo
   Neyhart, Anderson, et. al.
   44 Montgomery Street, Suite 2080
   San Francisco, CA 94104-6702

   to be received no later than last business day of each month, commencing with March 30, 2007.

   b.    <u>Final Payment</u>.  Villa agrees that all of the aforementioned sums in ¶2 are owed to the Trusts.  If Villa does not make a payment in accordance with the terms and conditions of ¶2, subparagraph a of this Settlement Agreement, Villa agrees that no waiver of any monies due will be granted and that any additional interest and attorneys fees owed, but not yet assessed will become due.

3.    <u>Waiver of Statute of Limitations</u>.  Villa waives any applicable statute of limitation period for the amounts due as set forth above pending the full payment of the amounts due.

4.    <u>Other Periods</u>.  This Agreement is intended to cover only the delinquencies associated with a payroll audit covering the time period of August 4, 2005 through December 31, 2006.  It does not cover prior periods or future delinquencies; moreover, if as a result of a payroll audit or

Have    a    blessed    day    5555555555                    P.2

by other means, the Trusts learn that Villa owes additional amounts, this agreement does not prevent recovery of such additional amounts.

5.    Enforce Agreement.  The parties agree that in the event any party institutes proceedings to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to receive all costs and expenses, including reasonable attorneys' fees, of such proceedings as determined by the Court having jurisdiction of such proceeding.

6.    Binding on Successors and Others.  This Agreement shall be binding upon the parties hereto and upon their heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of said parties, and each of them, and to their heirs, administrators, representatives, executors, successors and assigns.

7.    Governing Law.  The terms and conditions of this Agreement shall be interpreted and construed in accordance with the laws of the State of California and to the extent applicable by the Employee Retirement Income Security Act ("ERISA").  If any term or condition of this Agreement is determined to be invalid, the remainder of the provisions shall remain in full force and effect.

8.    Agreement Jointly Drafted.  This Agreement and each of its provisions have been jointly drafted by the parties; neither party shall be deemed to have been the drafting party.

9.    Agreement Freely Entered Into.  The parties represent and agree that this Agreement, and the releases contained in this Agreement, have been given voluntarily and free from duress or undue influence on the part of any person released by this Agreement, or by any third party.

10.    Counterparts.  This Agreement may be executed in counterparts.  A facsimile or .pdf copy shall be treated with the same force as an original.

WE AGREE TO THE ABOVE.

Dated: 4-10-07

VILLA ELECTRIC, INC.

Lee Villa, its President

Dated: 4-16-07

I.B.E.W. Local 234 – Tri-County Electrical Workers Trust Funds

Bernie Wall, Trustee

/ / /

/ / /

*Villa Electric, Inc.*                        2
*Settlement Agreement*

Have    a    blessed    day    5555555555                    P.3

FURTHERMORE, I, LEE VILLA, AGREE TO BE PERSONALLY LIABLE FOR VILLA ELECTRIC, INC.'S RIGHTS AND RESPONSIBILITIES PURSUANT TO THE TERMS AND CONDITIONS OF THIS SETTLEMENT AGREEMENT.

Date: _4-10-07_                         _____

                                        Lee Villa
                                        Type or print address:

                                        Type or print Social Security Number:

*Villa Electric, Inc.*                   3
*Settlement Agreement*